UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

====================================

LUFTHANSA TECHNIK AG,

                          Petitioner,

                                                    **DECISION AND ORDER**
                                                       11-CV-628A

            v.


ASTRONICS CORPORATION,

                          Respondent.

====================================

## I.      INTRODUCTION

Pending before the Court is a petition by Lufthansa Technik AG

("Lufthansa") for discovery in aid of foreign litigation pursuant to 28 U.S.C.

§ 1782.  Lufthansa currently is suing a Washington State company named

Astronics Advanced Electronic Systems ("AES") in Germany for patent

infringement.  Although the German court has not requested any discovery,

Lufthansa seeks discovery in this case from respondent Astronics Corporation

("Astronics"), a company in East Aurora, New York that is the parent company of

AES.  At the same time, Lufthansa seeks the same discovery from AES itself in a

case currently pending in the United States District Court for the Western District

of Washington.  *See In re Lufthansa Technik AG*, No. 11-CV-01386-JCC (W.D.

Wa.) (the "Washington Case").  Here, Astronics opposes any granting of

discovery as unduly broad and burdensome and as an attempt to circumvent
German court procedures.

The Court held oral argument on September 1, 2011. For the reasons
below, the Court finds that this case is duplicative of the Washington Case and
dismisses the petition *sua sponte*, pursuant to its inherent authority to administer
its docket.

## II.    BACKGROUND

This case is an offshoot of ongoing litigation in Germany concerning
allegations of patent infringement. Lufthansa is a German corporation involved in
manufacturing and maintenance services for the civil aviation industry. Lufthansa
owns a patent that bears European Patent No. EP 881 145 and German
publication No. DE 598 10 238 (the "Patent"). Without delving into technical
details, the Patent outlines the technology for a power supply that manufacturers
can install in the passenger cabin of commercial aircraft. The power supply
would give commercial airline passengers standard household electrical outlets
and voltage that they can use to power electronic devices in-flight. As a unique
safety feature, the electrical outlets would not deliver any power unless both
prongs of a plug enter the socket simultaneously. This safety feature reduces the
risk of electrical shock that might result if passengers, particularly children,
inserted objects into the socket intentionally or by accident. On December 29,
2010, Lufthansa commenced the German litigation because it believes that AES

is selling power supplies to the airline industry that infringe on the Patent.  The German court hearing the case held a hearing recently and is expected to issue a ruling around mid-October.  Meanwhile, AES has commenced a nullity proceeding in a separate German court to challenge the validity of the Patent. Lufthansa has until November 15, 2011 to respond in that action.

On July 22, 2011, Lufthansa commenced both this case and the Washington Case to try to obtain discovery that it would submit to the German infringement court in support of its infringement claims.  The German infringement court has not requested any discovery.  Nonetheless, Lufthansa believes that the German infringement court will accept documentary evidence that Lufthansa can obtain from AES and Astronics.  In both this case and the Washington Case, Lufthansa submitted proposed subpoenas that detailed the discovery that it sought.  To highlight the identical nature of the proposed subpoenas from each case, the Court has taken the 14 paragraphs from each proposed subpoena and placed them side-by-side below:

| Para. No. | This Case (Dkt. No. 1-4 at 5–6) | Washington Case (Case No. 11-CV-01386-JCC, Dkt. No. 1 at 20–21) |
|---|---|---|
| 1 | For all of Your Power Outlet Systems offered for sale from November 26, 2003 to the present, please produce all Component Maintenance Manuals and associated Illustrated Parts Catalogs. This | For all of Your Power Outlet Systems offered for sale from November 26, 2003 to the present, please produce all Component Maintenance Manuals and associated Illustrated Parts Catalogs. This |

|   |   |   |
|---|---|---|
|   | request is intended to describe Documents that would be requested during a standard aviation quality audit process and includes information that is maintained in accordance with applicable FAA regulations, *e.g.*, 14 C.F.R. Part 145. | request is intended to describe Documents that would be requested during a standard aviation quality audit process and includes information that is maintained in accordance with applicable FAA regulations, *e.g.*, 14 C.F.R. Part 145. |
| 2 | Documents sufficient to show the manufacturing details for all of Your Power Outlet Systems offered for sale from November 26, 2003 to the present, including without limitation technical drawings, electrical circuit diagrams, production cards, and testing documents regarding acceptance test procedures. This request is intended to describe Documents that would be requested during a standard aviation quality audit process and includes information that is maintained in accordance with parts and appliance production obligations according to FAA regulations, *e.g.*, 14 C.F.R. Part 21-G. | Documents sufficient to show the manufacturing details for all of Your Power Outlet Systems offered for sale from November 26, 2003 to the present, including without limitation technical drawings, electrical circuit diagrams, production cards, and testing documents regarding acceptance test procedures. This request is intended to describe Documents that would be requested during a standard aviation quality audit process and includes information that is maintained in accordance with parts and appliance production obligations according to FAA regulations, *e.g.*, 14 C.F.R. Part 21-G. |
| 3 | Documents sufficient to show the certification of parts for all of Your Power Outlet Systems offered for sale from November 26, 2003 to the present, including without limitation testing conditions, qualifications, safety controls, Communications with aircraft authorities, safety assessments, failure modes and effects analysis ("FMEA"), qualification | Documents sufficient to show the certification of parts for all of Your Power Outlet Systems offered for sale from November 26, 2003 to the present, including without limitation testing conditions, qualifications, safety controls, Communications with aircraft authorities, safety assessments, failure modes and effects analysis ("FMEA"), qualification |

| | | |
|---|---|---|
| | test plans, qualification test reports, and external expert statements. This request is intended to describe Documents that would be requested during a standard certification process and includes information that is maintained in accordance with applicable FAA regulations, *e.g.*, 14 C.F.R. Part 21-J. | test plans, qualification test reports, and external expert statements. This request is intended to describe Documents that would be requested during a standard certification process and includes information that is maintained in accordance with applicable FAA regulations, *e.g.*, 14 C.F.R. Part 21-J. |
| 4 | Documents sufficient to show each sale of each of Your Power Outlet Systems from November 26, 2003 to the present. You may produce a summary of this data in an Excel spreadsheet or comparable electronic format. | Documents sufficient to show each sale of each of Your Power Outlet Systems from November 26, 2003 to the present. You may produce a summary of this data in an Excel spreadsheet or comparable electronic format. |
| 5 | Documents sufficient to show each offer for sale of each of Your Power Outlet Systems that did not result in a sale from November 26, 2003 to the present. | Documents sufficient to show each offer for sale of each of Your Power Outlet Systems that did not result in a sale from November 26, 2003 to the present. |
| 6 | Documents sufficient to show the dollar amount and number of units, by month, of sales of Your Power Outlet Systems sold or imported into the Protected Countries or sent to any third party for import and/or use in the Protected Countries from November 26, 2003 to the present. You may produce a summary of this data in an Excel spreadsheet or comparable electronic format. | Documents sufficient to show the dollar amount and number of units, by month, of sales of Your Power Outlet Systems sold or imported into the Protected Countries or sent to any third party for import and/or use in the Protected Countries from November 26, 2003 to the present. You may produce a summary of this data in an Excel spreadsheet or comparable electronic format. |
| 7 | Documents sufficient to identify | Documents sufficient to identify |

| | | |
|---|---|---|
| | by part number, product number, product name, or other unique identifier all of Your Power Outlet Systems from November 26, 2003 to the present. You may produce a summary of this data in an Excel spreadsheet or comparable electronic format. | by part number, product number, product name, or other unique identifier all of Your Power Outlet Systems from November 26, 2003 to the present. You may produce a summary of this data in an Excel spreadsheet or comparable electronic format. |
| 8 | Documents sufficient to show the identity of all recipients and/or distributors of Your Power Outlet Systems, including without limitation seat manufacturers or cabin electronic manufacturers to whom Your Power Outlet Systems were offered or sold from November 26, 2003 to the present. | Documents sufficient to show the identity of all recipients and/or distributors of Your Power Outlet Systems, including without limitation seat manufacturers or cabin electronic manufacturers to whom Your Power Outlet Systems were offered or sold from November 26, 2003 to the present. |
| 9 | All Documents referring or relating to EP 145 Patent, including without limitation all Communications and/or Agreements referring or relating to EP 145 Patent from November 26, 2003 to the present. | All Documents referring or relating to EP 145 Patent, including without limitation all Communications and/or Agreements referring or relating to EP 145 Patent from November 26, 2003 to the present. |
| 10 | All correspondence referring or relating to the potential use of power supplies suitable for providing an alternating current supply with 110 V or more in aircraft passenger seating areas and seats from November 26, 2003 to the present. | All correspondence referring or relating to the potential use of power supplies suitable for providing an alternating current supply with 110 V or more in aircraft passenger seating areas and seats from November 26, 2003 to the present. |
| 11 | All Documents referring or relating to Communications | All Documents referring or relating to Communications |

|    |    |    |
|----|----|----|
|    | and/or Agreements between Astronics and K.I.D. relating to (a) Your Power Outlet Systems, (b) any claims which K.I.D. may have against You, (c) any potential patent infringement claims that K.I.D. or Lufthansa might have against You, or (d) relating to the use of technology covered by EP 145 Patent. | and/or Agreements between AES and K.I.D. relating to (a) Your Power Outlet Systems, (b) any claims which K.I.D. may have against You, (c) any potential patent infringement claims that K.I.D. or Lufthansa might have against You, or (d) relating to the use of technology covered by EP 145 Patent. |
| 12 | Documents sufficient to show advertising, marketing, and/or promotion of Your Power Outlet Systems from November 26, 2003 to the present. | Documents sufficient to show advertising, marketing, and/or promotion of Your Power Outlet Systems from November 26, 2003 to the present. |
| 13 | Documents sufficient to identify the person or persons responsible for technical development, safety assessment, FMEA, litigation, and licensing by or from Astronics of technology referring or relating to Your Power Outlet Systems. This request includes, but is not limited to, applicable organizational charts or tables of organization. | Documents sufficient to identify the person or persons responsible for technical development, safety assessment, FMEA, litigation, and licensing by or from AES of technology referring or relating to Your Power Outlet Systems. This request includes, but is not limited to, applicable organizational charts or tables of organization. |
| 14 | Documents sufficient to identify the person or persons responsible for marketing, sales, billing, and shipment of Your Power Outlet Systems. This request includes, but is not limited to, applicable organizational charts or tables of organization. | Documents sufficient to identify the person or persons responsible for marketing, sales, billing, and shipment of Your Power Outlet Systems. This request includes, but is not limited to, applicable organizational charts or tables of organization. |

Lufthansa urges the Court to order Astronics to produce the discovery

listed above because of the value that it will have in the German infringement

litigation.  Citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241

(2004), Lufthansa argues that Astronics' status as a non-party favors production

because there is no mechanism in the German infringement court that would

allow for non-party discovery of this type.  Lufthansa also contends that, although

the German infringement court has not requested this discovery, German law

does not preclude its use, and German courts in similar situations in the past

have accepted this type of evidence.  Lufthansa argues further that its attempt at

obtaining this discovery would not constitute an attempt to circumvent any

discovery restrictions under German law.  Finally, Lufthansa argues that its

requests are narrowly tailored and that, even if the Court disagreed, the requests

can be tailored in the Court's discretion rather than denied outright.

Astronics opposes Lufthansa's request for discovery because it assesses

the last two *Intel* factors differently.  According to Astronics, at least some of the

discovery that Lufthansa seeks matches discovery requests that it submitted in

the German infringement action.  This matching is important to Astronics

because, according to it, German patent litigation procedure prohibits receiving

information related to damages until after a defendant is held to infringe, and not

before.  The German infringement court has not yet ruled on the issue of

infringement and will not do so until mid-October.  To require any of Lufthansa's

requested discovery now would constitute a circumvention of German procedure.

Additionally, Astronics considers Lufthansa's discovery requests unduly broad

and burdensome for three reasons.  First, the ongoing infringement action in

Germany is equivalent to proceedings in a U.S. federal court for claim

construction, which is a matter of law that does not need factual discovery.

Second, any documents that would be responsive to Lufthansa's discovery

requests are in the possession of AES in Washington.  Given that Lufthansa has

commenced a twin Section 1782 proceeding in Washington, there is no reason to

order and manage document production from this District.  Third, Lufthansa has

requested broad categories of documents that would cover an eight-year span,

back to when AES first certified its power supply product for sale in 2003.

According to Astronics, the time frame of Lufthansa's discovery requests is

problematic because Astronics did not even purchase AES until 2005.

Additionally, Lufthansa has known about AES's sales since at least 2004.  Under

these circumstances, according to Astronics, the Court should not burden it with

production of documents that predate its ownership of AES and whose contents

Lufthansa knew at least partially as of 2004.

## III.   DISCUSSION

The parties have provided the Court with detailed and helpful information

regarding the factors governing discovery under 28 U.S.C. § 1782.  The Court's

most immediate concern, however, is Lufthansa's concession and the

9

documentary evidence that this case and the Washington Case are identical.  "As
between federal district courts, . . . though no precise rule has evolved, the
general principle is to avoid duplicative litigation."  *Colo. River Water
Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976) (citations omitted); *see also
Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general
power to administer its docket, a district court may stay or dismiss a suit that is
duplicative of another federal court suit.") (citations omitted).  "The power to
dismiss a duplicative lawsuit is meant to foster judicial economy and the
comprehensive disposition of litigation.  The doctrine is also meant to protect
parties from the vexation of concurrent litigation over the same subject matter."
*Curtis*, 226 F.3d at 138 (internal quotation marks and citations omitted).
Dismissal of duplicative litigation can occur *sua sponte.  See, e.g.,
Banks-Holliday v. Am. Axle & Mfg., Inc.*, No. 02-CV-245S(SC), 2005 WL 189724
(W.D.N.Y. Jan. 24, 2005) (Skretny, *J.*).

        Here, several factors lead the Court to conclude that this case is identical
to the Washington Case and should give way to that litigation.  Both cases are
offshoots of the same patent litigation currently pending in Germany.  The
petitioner is the same.  The respondent essentially is the same, given the parent-
subsidiary relationship between Astronics and AES.[1]  Most importantly, as listed

---

        [1] There is some irony in Lufthansa's insistence that this Court can avoid
duplicative litigation by ordering Astronics, as the parent company, to produce all
discovery for itself and AES within this case.  Lufthansa is generally correct that

in the table above, the discovery that Lufthansa seeks is the same.  In both this

case and the Washington Case, Lufthansa wants information about the

manufacturing, certification, maintenance, and sales of AES's power supply

products.  Although the parties have offered competing speculation about where

some potentially responsive documents may lie, they have not disputed that at

least a significant number of potentially responsive documents are in Washington

where AES operates.  Finally, the district court in Washington appears to have

jurisdiction over both AES, the actual defendant in the German infringement

litigation, and a significant number of potentially responsive documents.

--------

"a parent corporation has a sufficient degree of ownership and control over a
wholly-owned subsidiary that it must be deemed to have control over documents
located with that subsidiary."  *Dietrich v. Bauer*, No. 95 Civ. 7051(RWS), 2000
WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000) (citations omitted).  Lufthansa has
overlooked, however, that documents can flow in the reverse direction as well.
*See U.S. v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007) ("Parent
corporations have been compelled to produce documents in the hands of
subsidiaries, [and] subsidiaries documents in the hands of their parent entities
. . . .") (citations omitted); *Ferber v. Sharp Elecs. Corp.*, No. 84 Civ. 3105(RO),
1984 WL 912479, at *1 (S.D.N.Y. Nov. 28, 1984) ("[I]t appears that if
circumstances exist that indicate some form of 'control' by the subsidiary over the
documents and information sought—even if the documents or other information
are in the possession of the parent—the subsidiary may be required to produce
the requested data or at least to make a good faith effort to do so.") (citations
omitted); *see also MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, No.
3:09-cv-00078, 2010 WL 2757351, at *7 n.3 (W.D. Va. July 13, 2010) (citing
*Ferber*).  Since the Washington district court can order AES to produce Astronics
documents through the Washington Case, Lufthansa unintentionally has
furnished another reason to avoid duplicative litigation here.

11

Under these circumstances, the Court finds that its sister court in Washington should address this litigation in the first instance.  With AES in its jurisdiction, the district court in Washington will have a closer connection to the ongoing German litigation.  Additionally, letting one court adjudicate the pending issues will eliminate the possibility of two different district courts issuing conflicting rulings.  The Court's dismissal here is without prejudice to revisit the issues presented if the district court in Washington declines to rule on petitioner's requests for reasons related to jurisdiction or venue.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court dismisses Lufthansa's petition (Dkt. No. 1) in its entirety.  The Clerk of the Court shall close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED:September 7, 2011